## MICHELLE CONCANNON AND SANDRA HOLIDAY, APPELLANTS, v. BETTY JO WINSHIP, EXECUTRIX OF THE ESTATE OF ANNE B. VONOVICK, RESPONDENT.

No. 9210

July 12, 1978                                                581 P.2d 11

*R. Paul Sorenson* and *Martin Becker,* of Las Vegas, for Appellant Concannon.

*William R. Devlin,* of Las Vegas, for Appellant Holiday.

*Charles E. Thompson,* of Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a district court order granting probate instructions. *See,* NRS 155.190(9).

Anne Vonovick died in Las Vegas on September 16, 1975, of a lingering and debilitating illness. On September 5, 1975, some eleven days before her death, she executed the will whose construction is the subject of this action. In this will, she purported to distribute among nine legatees various securities and debentures, as well as the funds contained in six time-certificate accounts and one savings account in several Nevada and California banks. After inventory of the estate, it was found that substantial discrepancies existed between the various accounts listed and bequeathed in the will and the accounts actually owned by the decedent at the time she drafted her will. Specifically, four of the accounts listed in the will had been closed four to five months before, one account listed in the will contained nearly six times the funds it was described in the will as containing, and six new accounts not listed in the will had been opened. In addition, two of the closed accounts whose proceeds were bequeathed in the will to various legatees were actually held in revokable trusts for other legatees. Likewise, one of the six accounts not listed in the will was held in revocable trust for one of the legatees. Nonetheless, the total amount bequeathed under the terms of the will was substantially identical to the total amount contained in the accounts actually existing at the time the decedent drafted her will and at the time of her death eleven days later.

Construing the will to reflect the decedent's intent that the individual accounts described in the will be characterized as specific legacies, the district court concluded that there existed latent ambiguities in the will. After tracing the funds through various accounts and giving effect to several of the Totten trusts created in the five months preceding the drafting of the will, the trial court then arrived at a distribution scheme at substantial variance with the scheme outlined in Anne Vonovick's

will: several of the legatees received many times the dollar amount bequeathed them under the terms of the will, Executrix Betty Jo Winship's share was reduced by approximately 40 percent, and Appellant Michelle Concannon, bequeathed $6,292.23 under the terms of the will, received nothing.

When the issue concerns the construction of the terms of a will, an appellate court is not bound by the interpretation accorded the instrument by the trial court. Hunter v. Manhan, 94 Nev. 380, 580 P.2d 474 (1978); Soady v. First National Bank, 82 Nev. 97, 411 P.2d 482 (1966); Sharp v. First Nat. Bk., 75 Nev. 355, 343 P.2d 572 (1959); *cf.,* Cord v. Neuhoff, 94 Nev. 21, 573 P.2d 1170 (1978). Rather, we are free to undertake an independent appraisal of and construe for ourselves the terms of the will.

Our primary aim in construing the terms of a testamentary document must be to give effect, to the extent consistent with law and public policy, to the intentions of the testator. Hunter v. Manhan, *supra;* Sharp v. First Nat. Bk., *supra;* Tsirikos v. Hatton, 61 Nev. 78, 116 P.2d 189 (1941). Clearly, the decedent in drafting her will had no intention of bequeathing nonexisting funds in nonexistent accounts. Rather, as we read this will, it was the *amount* of funds bequeathed to each of the legatees, rather than the particular *source* from which those funds were paid, that was of prime importance to the testatrix. The legacies were demonstrative, not specific: to the extent that each bequest was tied to a specific account, that account was meant only to be the primary rather than the exclusive source. In re Boice's Estate, 307 P.2d 324, 64 A.L.R.2d 773 (Ore. 1953); In re Kuhr's Estate, 120 N.Y.S.2d 729 (Sur.Ct. 1950); In re Kingsley's Will, 67 N.Y.S.2d 464 (Sur.Ct. 1946); In re Cline's Estate, 155 P.2d 390 (Cal.App. 1945); in re Dietemann's Estate, 119 P.2d 611 (Colo. 1941). The testatrix's mistaken beliefs as to the continued existence of several of the accounts listed in her will should not serve, therefore, to frustrate her obvious intent that each of the legatees named in the will receive the amount bequeathed under its terms.

Further, we disagree with the district court's conclusion that those Totten or tentative trusts existing at the time the will was drafted "are not part of the estate." "A tentative trust of a savings deposit in a bank can be revoked by the depositor at any time during his lifetime, by a manifestation of his intention

to revoke the trust. No particular formalities are necessary to manifest such an intention." Brucks v. Home Federal Sav. & Loan Ass'n, 228 P.2d 545, 548–549 (Cal. 1951). As stated above, the total funds available in all accounts actually existing at the time Anne Vonovick drafted her will was for all intents and purposes identical to the total funds bequeathed under the terms of the will. This being so, we think it was the clear intent of the testatrix to distribute under the terms of the will all the funds available to her, and to revoke any tentative trust inconsistent with her testamentary directions.

Reversed.