LEONE MARION DAHLGREN, Appellant, *v.* FIRST NATIONAL BANK OF NEVADA, Respondent.

No. 9146

June 28, 1978                                  580 P.2d 478

*Albright & McGimsey,* and *William H. Stoddard,* Las Vegas, for Appellant.

*Foley Brothers,* Las Vegas, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

During her lifetime, Julia Mae Carlin, as trustor, entered into a trust agreement with First National Bank of Nevada, as trustee. A provision of the trust provided that upon the death of trustor, her condominium together with a cash sum was to be distributed to Mamie Gilson.

Shortly after establishing the trust, Julia, through her attorneys, tendered to the trustee a dated and signed hand-written instrument indicating that along with the condominium decedent wished Gilson to have certain chattel property. Because title to the condominium was never given to the trustee

before Julia's death, it could not be distributed according to her instructions. The Bank, however, petitioned the court below to admit the hand-written instrument to probate as a holographic will. Appellant, decedent's niece, contested that petition.

Following trial, the lower court ordered all trust assets, except the condominium distributed pursuant to the trust agreement.[1] Subsequently, the court determined the hand-written instrument to be a holographic will and ordered respondent to execute a deed transferring the condominium to Gilson.[2] Appellant appeals that decision and order.

The sole issue confronting us is whether the trial court erred in finding the hand-written instrument to be a holographic will.

The principal focus of this case involves the sufficiency of decedent's testamentary intent. The hand-written instrument containing both date and signature read: "To whom it may concern, Along with my apt. mentioned in the trust fund, I would like Maymie Gilson to have all my personal effects, furniture and belongings."

Appellant contends that this instrument evidences insufficient testamentary intent or, in the alternative, any intent is specifically addressed to the chattel property only and the condominium must thus pass through intestacy. Respondent argues that the instrument adequately incorporates by reference the trust agreement and that the necessary testamentary intent is supplied by the trust instrument. Appellant's contention has substantial merit, and we are constrained to summarily disagree with respondent's argument.

The trust agreement was created to provide income to the decedent during her lifetime and to dispose of the trust res at her death. The instrument in part provided that:

> *FIFTH:* Upon the death of the trustor, the trust estate shall be administered subject to the following terms and conditions:

---

[1] The trust assets consisted of personal properties, including currency and diversified stocks, but the trust made no reference to personal effects, furniture, or "belongings."

[2] NRS 133.090 provides:

"1. A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state and need not be witnessed.

2. Every person of sound mind, over the age of 18 years, including married women, may, by last holographic will, dispose of all of his or her estate, real or personal, the same being chargeable with the payment of the testator's debts.

3. Such wills shall be valid and have full effect for the purpose for which they are intended."

> . . .
> (c) The Trustee shall make the following distributions:
>
> . . .
> 10. To Mamie Gilson, trustor's condominium apartment. . . .

There is no evidence whatsoever that decedent intended the trust to be anything other than an *inter vivos* document. However, the record is clear, and the court so found, that at no time was the condominium ever deeded to respondent, and it therefore did not become a part of the trust estate. *See,* Long v. Long, 252 S.W.2d 235 (Tex.App. 1952). The court did find, however, that the hand-written instrument was holographic in nature and that since it made reference to the trust that that was sufficient to unequivocally evidence decedent's intent that the condominium pass on her death to Gilson.

The standard for the interpretation of a will is the intention of the testator, Soady v. First National Bank, 82 Nev. 97, 411 P.2d 482 (1966); In re Hartung's Estate, 39 Nev. 200, 155 P. 353 (1916); In re Hartung, 40 Nev. 262, 160 P. 782 (1916), determined by the meaning of the words used. *Soady, supra;* Jones v. First Nat. Bank, 72 Nev. 121, 296 P.2d 295 (1956).

The court stated in In re Button's Estate, 287 P. 964, 967 (Cal. 1930), that:

> In order for a document to be the last will and testament of a deceased person, it must, in addition to meeting all other legal requirements, clearly show that the decedent intended it to take effect only after his death. . . .

The court further stated, quoting from Estate of Spitzer, 237 P. 739, 742 (Cal. 1925) that:

> It is undoubtedly the general rule enunciated by the leading case of Habergham v. Vincent, 2 Ves. Jr. 231, and oft repeated, that the true test of the character of an instrument is not the testator's realization that it is a will, but his intention to create a revocable disposition of his property to accrue and take effect only upon his death and passing no present interest.

For an instrument to qualify as a will it must demonstrate testamentary intent. In Hooker v. Barton, 284 P.2d 708, 710 (Okla. 1955), the court stated:

> We have long been committed to the rule that where an instrument is tendered to probate as an holographic will, it

must be plainly apparent that it was the intention of the deceased that the paper should stand for her last will and testament, and an insturment should be denied Probate unless such intention is plainly apparent.

In the instant case, the holographic document does not reflect that it is a will or that the properties therein mentioned were to pass upon death. The document expresses only a wish.

The decision and order of the lower court is reversed and the properties mentioned in the proffered holographic document shall be distributed in accordance with the laws governing intestacy.

BATJER, C. J., and THOMPSON, J., concur.

MOWBRAY, J., dissenting, with whom GUNDERSON, J., joins:

Respectfully, I dissent.

In order to qualify as a will, any document so offered must be shown to have been executed with the intent to make a will, or what we term in the law, anumus testandi. The Supreme Court of California has described the requirement as follows:

> In order for a document to be the last will and testament of a deceased person, it must, in addition to meeting all the legal requirements, [1] clearly show that the decedent intended it to take effect only after his death, and it must [2] satisfactorily appear therefrom that the decedent intended by the very paper itself to make a disposition of his property in favor of the party claiming thereunder. . . .

In re Button's Estate, 287 P. 964, 967 (Cal. 1930). Such intent, if left in doubt by the form of expression used in the instrument, is to be determined by considering the instrument in light of the circumstances surrounding its execution. In re Augestad's Estate, 106 P.2d 1087 (Mont. 1940); In re Spitzer's Estate, 237 P. 739 (Cal. 1924): 1 Page on the Law of Wills § 5.6, at 173 (Bowe-Parker rev. ed. 1960).

In the case at hand, the trial court found that the instrument in question "expesses testamentary intent". The court's determination must be upheld if it is supported by substantial evidence. In re Bristol's Estate, 143 P.2d 689 (Cal. 1943); In re Estate of Webber, 551 P.2d 1339 (Idaho 1976); In re Ingram's Estate, 307 P.2d 903 (Utah 1957). If more than one inference is supported by the evidence, "the reviewing court [shall] not substitute its deductions for those of the trial court." In re Schultz' Estate, 353 P.2d 921, 924 (Cal. 1960).

It also should be kept in mind that:

> The requirement of animus testandi does not mean that

> the word "will" or "testament" must be used in the transaction. . . . The test is . . . what its legal effect is in view of its intended nature and of the real intention of the maker as deduced from the instrument and from all the facts and circumstances. . . .

1 Page, *supra* § 5.6, at 173.

I believe that the trial court's determination is supported by substantial evidence, and therefore I would uphold that determination. The instrument, on its face, demonstrates an intent to make a disposition of decedent's property by the paper itself, in favor of the claimant. The use of the phrase, "I would like Maymie Gilson to have . . .", though not the phrase her attorney might have chosen, is plain indication of such intent. "The test is whether or not the testator intends, by his language, to control the disposition of his property. If he does, the words in question are testamentary, and the instrument is his will, no matter in how mild a form this intention is expressed." 1 Page, *supra* § 5.19, at 211.

Furthermore, the document is addressed "To whom it may concern", and treats only the decedent's intention regarding the disposition of the specified property. Courts have found sufficient present intent in other cases involving the much closer question presented by similar expressions in letters to relatives or friends. *E.g.,* In re Van Voast's Estate, 266 P.2d 377 (Mont. 1954); In re Spitzer's Estate, 237 P. 739 (Cal. 1925). The expression here was not contained in a casual letter, nor was its simply found among decedent's effects; it was transmitted, through her attorneys, to the officers of her trust. In light of these circumstances, I find it difficult to believe that decedent intended to express "only a wish", rather than an intention to dispose of her property as indicated in the instrument.

The intent of decedent to have the disposition take effect only after her death is indicated by the phrase, "[a]long with my apt. mentioned in the trust fund". Appellant does not contend that there is any question regarding the trust to which the instrument refers. While the revocable trust agreement called for management of decedent's property during her lifetime, it also contained a paragraph specifically providing for the disposition of her properties *after her death,* and it was *only* in this paragraph that decedent's apartment was mentioned.

Other courts have had no difficulty finding intent to dispose of property after death from surrounding circumstances, including reference to other documents, rather than from the express language of the instrument offered as a will. *E.g.,* In re Button's Estate, *supra* (surrounding circumstances); In re Spitzer's Estate, *supra* (language of enclosed deeds). Similarly, in

this case, the trial court was entitled to refer to the explicit language of the trust agreement to aid it in the interpretation of the instrument offered for probate.

I believe, therefore, that the determination of the trial court, that the instrument in question expressed sufficient testamentary intent, is supported by substantial evidence. Consequently, I would affirm.